UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KANAT ZHAKUOV,

Petitioner,

v.

KRISTI NOEM, et al.,

Respondents.

Case No.:  3:26-cv-00288-RBM-DDL

**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

**[Doc. 7]**

Pending before the Court is Petitioner Kanat Zhakuov's ("Petitioner") Amended Petition for Writ of Habeas Corpus ("Amended Petition") pursuant to 28 U.S.C. § 2241. (Doc. 7.)  For the reasons set forth below, the Court **GRANTS** the Amended Petition.

## I.    BACKGROUND

**A.    Factual Background**

Petitioner is a native and citizen of Kazakhstan who entered the United States on December 17, 2024.  (Doc. 8 at 1–2 (citing Doc. 8-1 at 3); Doc. 7-1 at 2, Declaration of Kanat Zhakuov ("Zhakuov Decl."), ¶ 1.)[1]  That same day, Petitioner was determined to be inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and taken into ICE custody.  (Doc. 8 at

---

[1]  The Court cites the CM/ECF electronic pagination for filings unless otherwise noted.

1

1–2.)  Petitioner received a positive credible fear determination and was then issued a Notice to Appear, which initiated removal proceedings against him.  (*Id.* at 2.)

Petitioner had an individual merits hearing on January 12, 2026.  (*Id.*)  The immigration judge conducted the hearing and denied Petitioner's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  (*Id.*; Zhakuov Decl. ¶ 5.)  Petitioner is "currently appealing the immigration judge's order" to the Board of Immigration Appeals ("BIA").  (Zhakuov Decl. ¶ 5.)

**B.    Procedural Background**

Petitioner, originally proceeding *pro se*, filed his Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Motion to Appoint Counsel on January 16, 2026. (Doc. 1.)  The Court denied the Motion to Appoint Counsel but granted Petitioner leave to file a renewed motion.  (Doc. 2 at 1–2.)  On February 4, 2026, Petitioner filed that renewed motion.  (Doc. 3.)  The Court granted the renewed motion, appointed Federal Defenders of San Diego, Inc. as counsel, and set a briefing schedule.  (Doc. 4.)  On February 12, 2026, Petitioner filed the Amended Petition.  (Doc. 7.)  A week later, Respondents filed their Return to Habeas Petition ("Response").  (Doc. 8.)  On February 23, 2026, Petitioner filed his Traverse ("Reply").  (Doc. 9.)

**II.    <u>LEGAL STANDARD</u>**

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a).  The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* § 2241(c)(3).

2

### III.   **DISCUSSION**

The Parties agree that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b).  (*See* Doc. 7 at 2; Doc. 8 at 2.)  Accordingly, the issue before the Court is whether, under the circumstances of this case, applying the mandatory detention provisions of § 1225(b) violates Petitioner's due process rights.[2]

Petitioner argues that, even though he is mandatorily detained, the "Due Process Clause countermands the government's statutory authority to detain immigrations without bond hearings" when such detention becomes unreasonably prolonged.  (Doc. 7 at 3; Doc. 11 at 4–6.)  Respondents argue that Petitioner's "detention is mandated by section 1225(b)(2) until the conclusion of his removal proceedings," and that "even if the Court infers a constitutional right against prolonged mandatory detention, Petitioner's claim still fails."  (Doc. 8 at 4–9.)

The Court agrees with Petitioner that an unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process, and that Petitioner's detention has become unreasonably prolonged.

### A.   **Due Process**

Respondents argue that the Supreme Court "addressed the due process rights of . . . inadmissible arriving noncitizens seeking initial entry into the United States" and "stated that such individuals have no due process rights 'other than those afforded by statute.'"  (Doc. 8 at 6 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).)

"Following the Supreme Court's decision in *Thuraissigiam*, some district courts

---

[2]  Respondents also argue that the Court lacks jurisdiction to hear the Petition under 8 U.S.C. § 1252(g).  (Doc. 8 at 3–4.)  The Court has consistently rejected this argument, *see Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1161–62 (S.D. Cal. 2025), and does so again here for the same reasons.  Petitioner "challenges only violations of ICE's mandatory duties under the Constitution."  (Doc. 11 at 3.)  He is thus enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order."  *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. 2025) (emphasis in original).

3:26-cv-00288-RBM-DDL

have adopted Respondents' reasoning to dismiss or deny habeas petitions in the context of arriving aliens subject to mandatory detention under Section 1225(b)(1)." *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1110 (S.D. Cal. 2025); *see Mendoza-Linares v. Garland*, Case No.: 21-cv-1169-BEN (AHG), 2024 WL 3316306, at *2 (S.D. Cal. June 10, 2024) ("Petitioner has no Fifth Amendment right to a bond hearing pending his removal proceedings."); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021) (same); *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 667 (S.D. Tex. 2021) (same).

"Most courts have ruled otherwise." *Gao*, 805 F. Supp. 3d at 1110 (collecting cases); *accord Abdul-Samed v. Warden of Golden State Annex Det. Facility*, Case No. 1:25-cv-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for citizens detained under 8 U.S.C. § 1225(b), . . . essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process."); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever."). The Court thus "joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process." *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020).

**B.   Prolonged Detention**

Petitioner surveys the different approaches that courts have taken in analyzing whether and when detention becomes unreasonably prolonged, and argues that, under any of those approaches, Petitioner is entitled to a bond hearing. (*See* Doc. 7 at 7–9.) Although Respondents disagree that the Court should reach this issue, they argue that, if the Court reaches it, the three-factor balancing test in *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022), is the proper framework for analyzing a due process challenge to

4

prolonged detention. (Doc. 8 at 7–9.) The Court notes, however, that the *Lopez* court analyzed those factors in the § 1226 context. *See Lopez*, 631 F. Supp. 3d at 879 ("To determine whether § 1226(c) detention has become unreasonable . . . ."). Therefore, the Court applies the six-factor balancing test used by courts analyzing prolonged detention under § 1225(b). *See Kydyrali*, 499 F. Supp. 3d at 773. These factors share significant overlap with the *Lopez* factors, and the Parties have adequately briefed them.

Under this test, the Court considers:

(1) the total length of detention to date; (2) the likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Gao*, 805 F. Supp. 3d at 1111.

As to the first factor, which has been described as "the most important," *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019), Petitioner has been detained for over 14 months. (*See* Zhakuov Decl. ¶ 1.) Respondents argue that "Petitioner's detention of fourteen months falls significantly short of the length courts have found to raise due process concerns." (Doc. 8 at 7 (collecting cases finding detention unreasonably prolonged after two to three years).) As another court in this District noted, though, "[c]ourts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable." *Abdul Kadir v. Larose*, Case No.: 25cv1045-LL-MMP, 2025 WL 2932654, at *5 (S.D. Cal. Oct. 15, 2025) (collecting cases and finding that a nearly 13-month detention weighed in favor of the petitioner). And as Respondents themselves note, "'[i]n general, as detention continues past a year, courts become extremely way of permitting continued custody absent a bond hearing.'" (Doc. 8 at 7 (quoting *Sibomana v. LaRose*, Case No.: 3:22-cv-933-LL-NLS, 2023 WL 3028093, at *4 (S.D. Cal. Apr. 20, 2023).) Having reviewed these cases, the Court finds that this factor favors Petitioner.

As to the second factor, Petitioner argues that although his merits hearing occurred

3:26-cv-00288-RBM-DDL

on January 12, 2026, he "has reason to anticipate significant future detention" because he has filed an appeal with the BIA. (Doc. 7 at 8.) The Court finds that the "undetermined, but likely significant, period of mandatory detention through the appeals process" weighs in favor of Petitioner. *Gao*, 805 F. Supp. 3d at 1111; *accord Abdul Kadir*, 2025 WL 2932654, at *5; *Masood v. Barr*, Case No. 19-cv-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("The BIA appeal . . . [is a] perfectly legitimate proceeding[] he is legally entitled to pursue," and the respondents "cannot predict with any degree of confidence when the BIA appeal will be resolved," which "could lead to further proceedings that might take up many more months, or even years.").

As to the third factor, "[t]he more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Petitioner attests that the conditions at Otay Mesa Detention Center make him "feel like [he is] in prison." (Zhakuov Decl. ¶ 8; Doc. 7 at 9 (collecting cases describing the conditions at Otay Mesa Detention Center).) As multiple other courts have found, detention at Otay Mesa Detention Center is "indistinguishable from penal confinement." *Kydyrali*, 499 F. Supp. 3d at 773 (citation omitted). This factor weighs in Petitioner's favor.

As to the fourth and fifth factors, the Court finds that neither Petitioner nor Respondents caused delays in the removal proceedings. Although Petitioner claims that there "were multiple continuances that were not the fault of Petitioner," an immigration judge made a decision regarding several of Petitioner's requests for relief on January 12, 2026. (Doc. 8 at 2; Zhakuov Decl. ¶ 5.); *see Gao*, 805 F. Supp. 3d at 1111 (finding no delay caused by the government where the petitioner "received a merits hearing before an immigration judge less than seven months after his arrest").

As to the sixth factor, Petitioner's applications for asylum, withholding of removal, and CAT relief were all previously denied. (Doc. 8 at 2; Zhakuov Decl. ¶ 5.) This makes it more likely that the removal proceedings will result in a final order of removal. *Cf. Abdul Kadir*, 2025 WL 2932654, at *5 (finding that the petitioner's grant of asylum was a strong

6

indication that he would not receive a final order of removal). This weighs against Petitioner.

Three of the factors, including "the most important one," weigh in Petitioner's favor, and only one of the factors weighs against him. Therefore, the Court finds that Petitioner's detention under § 1225(b) has become unreasonably prolonged and that due process requires that he be provided with a bond hearing. In light of this finding, the Court declines to reach the remaining grounds for relief raised in the Petition.

## C.    Request for Further Remedies

Petitioner also argues that "attacks on [immigration judge] independence under the current administration have severely compromised [their] neutrality. As a result, there is a serious risk that an [immigration judge] will order [Petitioner's] continued detention even if he poses no danger or flight risk." (Doc. 7 at 10–14 (citing cases, news articles, and statistics indicating a purge of immigration judges throughout the country).) Petitioner claims that the "Otay Mesa [immigration judges'] resistance to granting bond therefore accords with the larger movement to eliminate or silence [immigration judges] who side with immigrants, while bringing those that remain into line with the administration's priorities." (*Id.* at 15.) Therefore, Petitioner requests that he be immediately released, or that this Court conduct his bond hearing. (*Id.* at 15–17.)

The declaration upon which Petitioner relies was filed by former Immigration and Customs Enforcement counsel Jorge Artieda, who attested to "a seismic shift in bond hearing outcomes for individuals who had been granted federal habeas relief and ordered § 1226(a) bond hearings . . . *in the [district court] of Virginia*." (Doc. 7 at 10 (citing Doc. 7-1 at 5–11).) The district court did order Petitioner's immediate release in that case, as it had "no faith that the Government would comply with an order to hold a bond hearing." *Briceno Solano v. Mason*, — F. Supp. 3d —, 2026 WL 311624, at *20 (S.D. W. Va. Feb. 4, 2026). Based on the Court's observations in nearly 100 habeas petitions over which it has presided in the last five months, that has not been the case in this District. *See, e.g.*, *Palacios Trinidad v. Bondi*, 3:26-cv-00340-RBM-JLB, ECF No. 8 (S.D. Cal. Feb. 3, 2026)

7

(joint status report indicating that a bond hearing was scheduled for the petitioner); *Kumar v. LaRose*, 3:26-cv-00490-RBM-SBC, ECF No. 9 (S.D. Cal. Feb. 15, 2026) (joint status report indicating that an immigration judge ordered the petitioner released on bond); *Gosselin Cruz v. LaRose*, 3:26-cv-00407-RBM-BJW, ECF No. 8 (S.D. Cal. Feb. 23, 2026) (same).  Accordingly, the Court will not order Petitioner's immediate release, nor will it hold its own custody hearing.

## IV.    CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**.  Respondents are **ORDERED** to arrange an individualized bond hearing for Petitioner before an immigration judge within **ten (10) days** of entry of this Order to determine whether his continued detention is warranted.  Respondents shall bear the burden of establishing, by clear and convincing evidence,[3] that Petitioner poses a danger to the community or a risk of flight.  If no hearing occurs **within ten (10) days** of entry of this Order, Petitioner shall be released from Respondents' custody.  On or before **March 11, 2026**, Respondents **SHALL FILE** a status report indicating whether and when Petitioner received a bond hearing.

**IT IS SO ORDERED.**

DATE:  February 25, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[3] *See Sadeqi v. LaRose*, — F. Supp. 3d —, 2025 WL 3154520, at *4 (S.D. Cal. Nov. 12, 2025) ("Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents must justify her continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released.") (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018) (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond").

8

3:26-cv-00288-RBM-DDL